IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LARS KNIPP, by his next friend, Deborah Stone; JAMES KIM, by his next friend, Grace Kim; SUSANNAH TROGDON, by her next friend, Samuel Trogdon; AMBI HEARD; SHAUN MITCHELL; and ROBERT CHAFFIN by his next friends, Tom Chaffin and Lena Margareta Larsson Chaffin, | * * * * * * * * | |
| Plaintiffs, | * * | CIVIL ACTION 1:10-CV-2850-TCB |
| v. | * * | |
| GEORGE ERVIN "SONNY" PERDUE, III, et al., | * * * | |
| Defendants. | * | |

**DEFENDANTS' RESPONSE TO MOTION
FOR PRELIMINARY INJUCTION**

**COMES NOW** Governor Sonny Perdue, in his official capacity, Commissioner Clyde Reese, in his official capacity, and Dr. Frank Shelp, in his official capacity, Defendants in the above styled action, by and through counsel Thurbert E. Baker, Attorney General for the State of Georgia, and files this response showing that Plaintiffs should not be granted a preliminary injunction in this matter.

I.  **STATEMENT OF THE CASE**

Plaintiffs are six individuals who currently are receiving or formerly received funds from a program administered by the Department of Community Health (hereinafter "DCH") known as "SOURCE," an acronym for "Service Options Using Resources in a Community Environment. *See* Plaintiffs' Motion for Preliminary Injunction ("Motion") at ¶ 1. In late 2009 and early 2010, DCH informed Plaintiffs individually that they no longer met the qualifications to receive funds from SOURCE. *See* Complaint at ¶¶ 13-18. Thereafter Plaintiffs availed himself or herself of the state's "appeal" procedure via a hearing in front of an Administrative Law Judge ("ALJ") held at the Office of State Administrative Hearings ("OSAH").[1] *See id.* In the cases of Plaintiffs Trogdon and Chaffin, the ALJ upheld DCH's decision. *Id.* at ¶¶ 15, 18. Those Plaintiffs did not ask for agency review of the ALJ's decision. *See* Ex. "B." Plaintiff Heard is awaiting a hearing at OSAH. *See* Ex. "C." Plaintiff Knipp had a hearing and may still seek agency review. *See* Ex. "D."

SOURCE was part of the Georgia Medicaid State Plan until 2008. *See* Ex. "A" at ¶ 2. In January 2008, the Department received approval from the Centers

---

[1] Plaintiff Mitchell states he never received a termination notice and thus did not receive a hearing at OSAH. *See* Declaration of Seema Mason at ¶ 93. DCH withdrew the OSAH referral for James Kim and has not re-filed.

for Medicare and Medicaid Services ("CMS") to admit the SOURCE Program into the existing 1915(c) Medicaid Waiver for the Elderly and Physically Disabled. *See id.* The impetus for this move from the State Medicaid Plan to a Waiver Program was the Department's understanding from CMS that in order to continue providing the "wrap around" home and community services, the SOURCE Program could only continue as a Waiver Program. *Id.*

A Medicaid Waiver Program means that a program is designed to be population specific and admit participants who would otherwise require the care provided in an institution such as a nursing home or hospital. *See* Ex. "A" at ¶ 3. Participants in the Waiver Program must meet the institutional level of care being waived through the provision of home and community services. *See id.* When the Department removed SOURCE from the state plan, and truly treated it like a waiver program, it meant that the institutional level-of-care guidelines and the identified target group had to be strictly adhered to by the Department according to the CMS-approved Medicaid Waiver. *See* Ex. "A" at ¶ 4.

SOURCE is designed for persons over 65 years of age or persons under 65 who are disabled and who meet the criteria for Intermediate Nursing Home Level of Care. *See* Part II, Policies and Procedures for SOURCE, Chapter 701 (revised 4/05). SOURCE "was developed specifically to address chronic physical illness in

older and disabled recipients," although "a behavioral health diagnosis does not exclude a person from eligibility as long as the individual meets Nursing Home Level of Care criteria." *Id.*

Defendants do not deny that Plaintiffs received SOURCE services for a time. *See* Ex. "A" at ¶ 5. Plaintiffs, however, were never part of the targeted individuals for whom SOURCE was developed. *See id.* The Department has undertaken enhanced training in the past year to inform providers of the requirements for persons to receive SOURCE services. *Id.*

Persons receiving SOURCE are reviewed annually to determine if they still meet eligibility requirements as required by CMS. *Id.* at ¶ 6. As Plaintiffs' cases came up for review, it was determined that they did not meet SOURCE requirements since they are not over 65 years of age and are not physically disabled. *See id.* The Complaint evidences that they do not qualify for SOURCE: none of them is over 65 and none of them claim to be physically disabled. *See* Complaint at ¶¶ 38-43, 48-52, 58-62, 72-78, 83-89, 93-99. Because Plaintiffs did not meet SOURCE requirements they were informed of such and opted (prior to the filing of this suit) to avail themselves of Georgia's administrative appeal procedures. *See* Ex. "A" at ¶ 6.

4

## II.   ARGUMENT AND CITATION OF AUTHORITY

The Motion should be denied.  First, Plaintiffs do not have standing.  Second, Plaintiffs cannot make out a case for preliminary injunction because they cannot meet the four prong test as required by federal law.

### A.   Plaintiffs Do Not Have Standing To Bring This Action.

For a plaintiff to proceed in federal court he or she must have standing to bring the suit pursuant to Article III of the U.S. Constitution.  "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  A plaintiff must have suffered an injury in fact which must be "concrete and particularized." *See id.*  That injury must be actual or imminent and not conjectural or hypothetical. *Id.*  The injury must be caused by the conduct of a defendant and must be curable by a favorable decision of the court. *Id.*

In this case, Plaintiffs fail to show an injury which is concrete.  Instead, they argue that because of decreased SOURCE funding, "[P]laintiffs are now *likely* to have to enter institutions." Complaint at ¶ 36 (emphasis supplied).  Plaintiffs, however, are not presently institutionalized according to their complaint. *See id.* at ¶¶ 46, 55, 65, 74, 85, 96.  Further, they present no evidence to support the

imminence of institutionalization. See *31 Foster Children v. Bush*, 329 F.3d 1255, 1266-67 (11th Cir. 2003). Additionally, Plaintiffs Kim and Heard are still receiving SOURCE services and so at present can claim no adverse action against them. See Complaint at ¶¶ 54, 79. Finally, Plaintiffs do not meet the eligibility requirements for the SOURCE program. See *Murray v. Auslander*, 244 F.3d 807, 810-11 (2001). Accordingly, Plaintiffs do not have the requisite constitutional standing to bring this suit.

### B.     Plaintiffs Do Not Meet The Four Prong Test For A Preliminary Injunction And Thus Their Request Should Be Denied.

A preliminary injunction is an extraordinary and drastic remedy. See *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983); *Merial Ltd. v. Roman*, 2010 U.S. Dist. LEXIS 27263 (N.D. Ga. 2010). The traditional standards for granting preliminary injunctive relief, which are applied in this circuit, are that the movant must show (1) that there is a substantial likelihood that he or she will ultimately prevail on the merits; (2) that he or she will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4)

that if issued, the injunction would not be adverse to the public interest. *See Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).

In this circuit, these standards are more stringently applied than in all of the other circuits, and the movant must clearly carry the burden of persuasion on all four standards. *See Jefferson County*, 720 F.2d at 1519; *Merial Ltd. v. Roman*, 2010 U.S. Dist. LEXIS 27263. "Only in rare instances is the issuance of a mandatory preliminary injunction proper."[2] *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979).[3] Further, Plaintiffs must show an even greater likelihood of success when the relief sought is mandatory rather than prohibitive. *See Vincent v MARTA*, 225 F. Supp. 2d 1362, 1372 (N.D. Ga. 2002). When an action seeks to enjoin a government agency the traditional tack has been to give the agency wide latitude in conducting its business. *See id.* In addition, an injunction which gives Plaintiffs all or most of the relief to which they contend that they would be entitled to at trial is burdensome to Defendants. *See* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2948.2 (2d ed. 2010).

---

[2] Although labeled an injunction, for at least some of the plaintiffs, the relief Plaintiffs seek is to mandate that DCH keep Plaintiffs on the SOURCE "rolls" or put them back on to receiving SOURCE services.
[3] Fifth Circuit decisions rendered prior to September 30, 1981 are binding on this Court. <u>See</u> *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Further, equity should not lie where there is a remedy at law. See *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987); *A.A.A. Always Open Bail Bonds, Inc. v. DeKalb County*, 2004 U.S. Dist. LEXIS 30920 (N.D. Ga. 2004). In this case, Plaintiffs have a remedy at law in the state courts of Georgia via administrative and judicial review, to which they partially availed themselves of yet aborted by filing this lawsuit. See Complaint at ¶¶ 13-18.

Moreover, this Court should abstain for reasons of comity. A party should not seek federal intervention while in midprocess with a state appellate review system and should exhaust state appellate remedies before coming to the federal courts. See *New Orleans Pub. Serv. Inc. v Council of the City of New Orleans*, 491 U.S. 350, 357 (1989); *31 Foster Children v. Bush*, 329 F.3d 1255, 1274-1282 (11th Cir. 2003); *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943).

### 1. Plaintiffs are not likely to succeed on the merits.

Plaintiffs are unlikely to succeed on the merits in the case for a number of reasons. First, the Eleventh Amendment bars suit against a state or one of its agencies or departments absent a waiver or valid congressional override. See *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The State of Georgia has specifically preserved its sovereign immunity in its constitution. See Ga. Const. of

1983, Art. I, § 2, ¶ 9(f).  While an exception to Eleventh Amendment immunity exists under *Ex Parte Young*, 209 U.S. 123 (1908), it is limited to suits against individuals sued in their official capacity for prospective injunctive relief.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997).  In this case, those Plaintiffs who are no longer receiving SOURCE services are seeking retrospective relief, and thus, their claims are barred by the Eleventh Amendment.

Additionally, some courts have held that Congress failed to abrogate Eleventh Amendment immunity for states under Title II of the Americans with Disabilities Act ("ADA") and further that immunity may still exist for states in suits brought under Title II where there is no underlying constitutional violation alleged.  *See United States v. Georgia*, 546 U.S. 151, 158-59 (2006); *Wagan Clifton, Jr. v. Georgia Merit System*, 478 F. Supp. 2d 1356, 1368 (N.D. Ga. 2007).  Plaintiffs also rely on 28 C.F.R. § 35.130(b)(3) as support for their allegation that Defendants have discriminated against them and failed to accommodate them.  *See* Memorandum in Support of Motion for Preliminary Injunction ("Memorandum") at 27-28.  To the extent that Plaintiffs are utilizing the regulation relied upon as the vehicle for this suit, no private right of action exists in such a regulation promulgated to implement the ADA.  *See American Ass'n of People with Disabilities v. Harris*, 605 F.3d 1124, 1137 (11th Cir. 2010).

In addition, Plaintiffs do not assert any claims in their complaint against Governor Perdue, Dr. Shelp, or the Department of Behavioral Health and Developmental Disabilities. As such they have failed to state a claim upon which relief can be granted regarding those defendants. *See* Fed. R. Civ. P. 12(b)(6).

Plaintiffs are not qualified individuals under the Rehabilitation Act or the ADA which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. *See also* 42 U.S.C. § 12101, 29 U.S.C. § 794. In this case, Plaintiffs are not being denied SOURCE services based on any particular disability, be it mental illness or developmental disability, but instead are being denied such benefits because they otherwise do not meet the program requirements which have been set forth legitimately by DCH. *See* Ex. "A" at ¶¶ 5-6. That is, they do not meet the requirements to receive SOURCE services because they are not over 65 years of age or are not physically disabled. *See id.*

Given that the state has not discriminated against Plaintiffs based on any disability, Defendants are under no obligation to provide a particular type of service. The United States Supreme Court held in *Olmstead*

> We do not …hold that the ADA imposes "on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to "provide a certain level of benefits to individuals with disabilities.' We do hold, however, that States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide.

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 (1999) (internal citations omitted). Section 504 of the Rehabilitation Act "'does not require affirmative action on behalf of handicapped person, but only the absence of discrimination.'" *Manecke v. School Bd. of Pinellas County*, 762 F.2d 912, 921 (11th Cir. 1985) (quoting *Smith v. Robinson*, 468 U.S. 992, 1020 (1984); *Southeastern Community College v. Davis*, 442 U.S. 397 (1979)). "The State's responsibility, once it provides community-based treatment to qualified persons with disabilities, is not boundless." *Olmstead, supra,* 527 U.S. at 603. States are required only to make "reasonable modifications" to avoid discrimination. *Id.* The modification suggested by Plaintiffs would effect an entire reworking of the SOURCE program and would represent a significant alteration to that program which is not required under the ADA. *See id.* at 592; 28 C.F.R. § 35.130(b)(7). Further, Title II of the ADA does not expressly require public entities to make reasonable accommodations for disabled individuals. *See Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1082 n.13 (11th Cir. 2007).

11

## 2. Plaintiffs have not shown that they will suffer irreparable harm.

A showing of irreparable injury is the "sine qua non of injunctive relief." *Siegel v. LaPore*, 234 F.3d 1163, 1175 (11th Cir. 2000)(per curiam). It cannot be presumed, even where there is a violation of constitutional rights. *See id.* at 1177. In all cases, a movant for preliminary injunction against a state or local government must present facts that show a "real and immediate" threat of substantial, irreparable harm before a federal court will intervene. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). *See also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("[A] party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical-threat of future injury.). The United States Court of Appeals for the Eleventh Circuit has "emphasized on many occasions, the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Siegel, supra*, 234 F.3d at 1176-77(quoting *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).

Plaintiffs argue that they "are now *likely* to have to enter institutions" with the loss of SOURCE services. Complaint at ¶ 36 (emphasis supplied). *See*

Memorandum at 34. As noted *infra*, Plaintiffs have not shown actual harm or the imminence thereof; their claims of harm are speculative. Further, there are numerous factors which might lead to Plaintiffs' institutionalization. Since Plaintiffs cannot show actual harm, they have not met this prong.

### 3. Plaintiffs cannot show that the threatened injury to them outweighs the damage to Defendants.

On a motion for injunction, Plaintiffs bear the burden of showing that their perceived injuries outweigh the damage that the injunction might cause to Defendants. *See Baker*, *supra*, 856 F. 2d at 169. In balancing the hardships, a court should consider whether the injunctive relief being sought is prohibitory or mandatory, as is the case here. *See* Wright & Miller, *supra* § 2948.2. "Only in rare instances is the issuance of a mandatory preliminary injunction proper." *Harris*, *supra*, 596 F.2d at 680. In addition, where, as here, the injunction would give Plaintiffs all or most of the relief to which they would be entitled if they were successful at trial on the merits, preliminary relief may be "excessively burdensome." *See* Wright & Miller, *supra*, § 2948.2.

Plaintiffs frame the balance to be determined as thus: their risk of institutionalization as opposed to the cost to Defendants of Plaintiffs' care in an

institution versus care in a community setting.  *See* Memorandum at 36.  First, their risk is speculative.  Second, the injunctive relief sought by Plaintiffs will force Defendants to make a significant alteration to the SOURCE program or to keep certain consumers receiving SOURCE services who do not meet the program's requirements.  As such, the risk to Defendants is much greater than to Plaintiffs.

### 4.    Public interest demands that the injunction be denied.

DCH submitted the SOURCE program through the waiver-approval process with CMS and obtained approval.  *See* Ex. "A" at ¶ 2.  Plaintiffs do not meet the requirements to receive services through the SOURCE program.  *See id.*  The state has a vested interest in maintaining the program standards it sets which have been approved by CMS.  Plaintiffs have provided no evidence of actual harm, and thus, the scale weighs heavily against the grant of the Motion.  The denial of the Motion would not disserve the public.  *See Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir. 1999).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction is without merit and should be denied as to all Defendants.

Respectfully submitted,

| | |
|---|---|
| THURBERT E. BAKER | 033887 |
| Attorney General | |

| | |
|---|---|
| DENNIS R. DUNN | 234098 |
| Deputy Attorney General | |

s/SHALEN S. NELSON
| | |
|---|---|
| SHALEN S. NELSON | 636575 |
| Senior Assistant Attorney General | |

s/MICHELLE TOWNES
| | |
|---|---|
| MICHELLE TOWNES | 714924 |
| Assistant Attorney General | |

s/PENNY L. HANNAH
| | |
|---|---|
| PENNY HANNAH | 323563 |
| Assistant Attorney General | |

PLEASE SEND ALL
COMMUNICATIONS TO:
MICHELLE TOWNES
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: 404-656-3446
Facsimile: 404-463-1062

# CERTIFICATE OF SERVICE

I do hereby certify that I have this day filed electronically, the within and foregoing **DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

>C. Talley Wells, Esq.
>Atlanta Legal Aid Society, Inc.
>246 Sycamore Street
>Decatur, Georgia 30030
>
>Charles R. Bliss, Esq.
>Atlanta Legal Aid Society, Inc.
>246 Sycamore Street
>Decatur, Georgia 30030

This 4th day of October, 2010.

>s/PENNY L. HANNAH
>Georgia Bar No. 323563
>Assistant Attorney General
>Counsel for Defendants

PENNY L. HANNAH
Assistant Attorney General
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: 404-656-3387
Facsimile: 404-463-1062
E-mail: phannah@law.ga.gov